## In the Orphans' Court of Montgomery County.

### *In re* ESTATE OF ELIZABETH KLINE, DECEASED.

A clause in testatrix's will empowered the executrix to sell the real estate, "if in her opinion she should think it best," and directed the balance of the purchase money, after the payment of a certain debt, to be put out at interest, well secured. It further provided for a certain distribution of the balance of the estate at the death of the two daughters, E. and A., and appointed the daughter E., executrix.

E. died without having sold the real estate, and A. became administratrix *c. t. a.*, and petitioned the court for an order to sell the real estate, which petition set forth no other ground than that the petitioner thought "it best and most advisable to make sale of the real estate without further delay." The order was granted, the report of sale confirmed *nisi*, and exceptions filed. After argument, the sale was set aside, and it was *held* that the fund arising from such sale would not be in condition to be administered and distributed, but a testamentary trust would be constituted, which cannot be committed to an administrator *c. t. a.*

Opinion delivered by

ROSS, J. The learned president of this court, awarded this order of sale on the 22nd of February, 1869, and report of its execution was duly presented and confirmed *nisi;* at that time, the purchaser appeared by counsel, and suggested that there was a question, under the trusts declared in the will, as to the power of the court to direct a sale.

It was then determined by agreement of counsel, at the instance of the court, to file exceptions to the confirmation of the sale, and under those exceptions this question of the authority of the court to decree a sale, it was further agreed, should be determined. The only inquiry, therefore, which is presented by the exception, is whether the administratrix *de bonis non, c. t. a.*, under the special provisions of the will of the testatrix could exercise the power of sale conferred by the will upon the deceased executrix, and dependent upon the adjudication of this point, whether the court had the power to award an order of sale upon the petition of the administratrix.

It is well settled, that whenever a power of sale is vested in an executor, *virtute officii*, the administrator, *c. t. a.*, upon his decease, may execute that power, for the purpose of bringing the land into course of administration. This power is statutory, and is derived from the 1st, 2nd, and 3rd sections of the act of March 12, 1800, Purdon Pl. 67, 68, and 69, and from the 12th, 13th, 14th, and 67th sections of the act of February 24, 1834, Purdon Pl. 61, 62, 63, and 65, (Title Decedents), and it has been held that the bond executed before the register, in order to obtain letters of administration *c. t. a.*, will be held as security for the faithful application of the proceeds of real estate sold in pursuance of such power, exercised for the purposes of administration. Hartzell *v.* Comth., 6 Wr. 453. But the power which by these statutes is vested in the administra-

tor *c. t. a.*, is granted only for the purpose of bringing the land into a course of administration. Ross *v.* Barclay, 6 Harr. 179; Keefer *v.* Schwartz, 11 Wr. 503; Hartzell *v.* Comth., *supra*.

It is, however, equally true that no statute of Pennsylvania empowers an administrator, with the will annexed, to execute a trust of land confided to an executor by name or title, for any other purpose then to sell for the object of bringing the land into a course of administration. The object of the acts referred to, was to vest the power to sell in administrators *c. t. a.*, for purely administrative purposes, and whenever the proceeds of the land will, and must by the terms of the will, remain in the hands of the administrator, who must retain them for fiduciary purposes, then there is no dissolution by statute of such power of sale upon such administrator.

The sections cited, by judicial construction, have been held to place an administrator *c. t. a.* upon the same footing with a surviving executor, but they were not intended to transform him into a testamentary trustee. Ross *v.* Barclay, 6 Harris, 179. In this case Chief Justice Gibson says: "Now the object of the statute was to make land legal assets in all cases, not to confound the distinction between trusts and powers. With us, land has perhaps always been legal assets, and when a trust is created to bring it into a course of administration, it is proper that an administrator should succeed to the execution of it, but the statute was not intended for a trust unconnected with an executor's ordinary duties." The same distinction is recognized in the cases already cited.

To determine the questions raised in this inquiry, the will of the testatrix must be examined to ascertain whether the grant of authority to the executrix was that of a naked power, or a trust created to bring the land into administration, or whether it be a trust unconnected with the ordinary duties of executorship, and, therefore, technically, testamentary.

The clauses in the will, which invoke this inquiry, are as follows: "I give and bequeath to my daughter, Elizabeth Kline, all the yearly income or profits arising out of all my real estate during her lifetime, and at her decease, the above specified income and profit shall fall into the hands of my daughter, Abigail Shoemaker, during her lifetime. I do hereby empower my executor to make public sale of all my real estate, if in her opinion she should think it best, otherwise she is not. In case my executrix effect a sale on my real estate, I order and direct her first to pay the large debt out of the purchase money, and the whole of the balance thereof shall be put out at interest, and well secured for the payment thereof. At the decease of my daughters Elizabeth and Abigail, the whole *balance* of my estate (except the clock) shall be equally divided into five parts and divided as follows, viz.: (then follows the distribution). I do hereby constitute and appoint my daughter Elizabeth Kline my executrix to carry into effect the tenor and meaning of this my last

will and testament, with full power to make a good and permanent title to the purchaser."

Elizabeth Kline, the younger, accepted the trust, and held the real estate thus devised, until her death, without exercising the power of sale thus vested in her. Upon her death, Abigail Shoemaker, the *cestui que trust* in remainder, obtained letters of administration *c. t. a.*, and presented the petition upon which the order was awarded. This petition recited the clauses of the will, declared that in the judgment of the petitioner it was " best and most advisable to make sale of the real estate without further delay," and prayed that an order of sale might be decreed. No amount of any existing indebtedness was made, the sole ground upon which the exercise of the power was invoked being the judgment of the administratrix as to the advisability of the sale. It is apparent that if this sale be confirmed, the purchase-money will be substituted for the land, and will be held for the uses and trusts indicated by the will and limited upon the sale of the real estate. That instead of being in condition to be administered and distributed, this money must be held and invested, and the interest annually accruing thereon be paid to Abigail Shoemaker, during her life. That this constitutes a testamentary trust, is too clear to admit of argument. If Elizabeth Kline, the executrix, had in her lifetime exercised the distributionary power of sale vested in her, and sold this real estate, and invested the proceeds as directed by the will, a trust would have sprung into existence the moment such sale was effected. That trust would have been to hold the principal during her own life, and annually receive the income, and at her death a further trust as to the income, to Abigail Shoemaker, during her life, and at *her* death a still further trust to pay over this invested principal to the legatees named in the will. If the sale had been effected by Elizabeth, could it be pretended that upon her death an administrator of Elizabeth Kline, the elder, with the will annexed, would,. *virtute officii*, have become the trustee of this fund ? It would have then been the duty of the orphans' court, upon the happening of this contingency, to have appointed a trustee of the fund.

Yet, if this sale be confirmed, this testamentary trust will at once spring into existence, and attach to the purchase-money, and will subsist until the death of Abigail Shoemaker, the *cestui que trust* and administratrix. This will clearly be an execution of a testamentary trust, and almost a creation of it, which the authorities cited demonstrate cannot be committed to an administrator *c. t. a.*, by force of the statutes. If Abigail Shoemaker were dead, and nothing remained but distribution, after formal administration, to convert the assets into money, no testamentary trust would be invoked, and the power to decree. sale would be undoubted ; but while she lives, the sale calls into being a trust for her benefit, and in protection of remaindermen, with which an administrator *c. t. a.* cannot intermeddle. This view being decisive of the question of power

in the administratrix and jurisdiction in the court, renders it unnecessary to discuss, whether by the terms of this will the power to sell during the life-time of Abigail Shoemaker, did not expire with Elizabeth Kline, being committed to her individually. The other ground being sufficient to determine this case, that point is not decided.

An excellent test to determine whether the power of sale sought to be exercised is vested by statute in an administrator *c. t. a.*, is whether the administration bond will render the sureties therein liable in case of a misapplication of the fund. That bond is conditioned for the faithful performance of an administration with a will annexed, and not for the faithful execution of trusts limited in such will. It seems apparent in this case, viewed with the light afforded by Hartzell *v.* Comth. that the sureties in the administration bond would not be liable for a breach in the faithful execution of the trust by the administrator, but if there be a duty not carried by the condition of the bond then it is a duty not within the purview of the powers vested in the administrator with the will annexed, and it is a testamentary trust which he cannot execute *virtute officii*.

It is with some regret that I have come to the conclusion that this sale must be set aside, for the purchaser is anxious to accept title if he can safely do so—but this is so clearly an exercise of authority not vested in the petitioner, *virtute officii*, that a decree confirming this sale would be a mere nullity.

Title can be vested in the purchaser by other and much more secure means ; and while it is not the duty of the court to point them out it is theirs only to see that their decrees are not in excess of the powers vested in them.

Sale set aside. The order of sale and all proceedings therein revoked.